**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

Order Filed on February 8, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey

JOHN K. SHERWOOD
BANKRUPTCY JUDGE

(973) 645-4693

February 8, 2023

Nicholas Fitzgerald, Esquire
Fitzgerald & Associates, P.C.
649 Newark Avenue
Jersey City, New Jersey 07306
Nickfitz_law@gmail.com

Paul Jenkins, Esquire
Leopold & Associates, PLLC
80 Business Park Drive, Suite 110
Armonk, New York 10504
pjenkins@leopoldassociates.com

Bawer Aksal, Bankruptcy Case No. 17-12555

**LETTER OPINION**

Dear Counsel:

This letter opinion follows the Court's findings and conclusions set forth on the record on December 15, 2022 concerning Mr. Aksal's objection to the proof of claim filed by Trinity Financial Services (Claim 3-1) in the amount of $199,197.15. The claim was assigned in April 2020 to Aspen Properties LLC as agent for Wilmington Savings Fund Society ("Wilmington") who responded to the objection. Mr. Aksal's objection to the claim is straightforward. He denies borrowing money from Fort Lee Federal Savings Bank, the alleged originator of the home

Page 2
February 8, 2023

mortgage loan, and states that he was defrauded by the former management of the bank. He argues that the signatures on the mortgage documents attached to the proof of claim were forged. Mr. Aksal offered his own testimony in support of his objection together with testimony from a corroborating witness, Ms. Mirza, who described herself as Mr. Aksal's financial consultant. The Court notes that Mr. Aksal was in a difficult position, having to prove that he did not borrow money in a transaction that allegedly occurred in September 2006. Obviously, it is difficult to prove with documents and corroborating evidence that something did not happen.

Wilmington's defense to Mr. Aksal's objection was to rely on the promissory note, mortgage, and mortgage modification, all of which were signed and notarized. Wilmington also presented a handwriting expert, Ms. Leonard, who concluded that the signatures on the mortgage documents were similar to other known signatures of Mr. Aksal. The Court concluded that the testimony of Ms. Leonard was more credible than Mr. Aksal's proposed expert, Ms. Ottinger. Mr. Aksal's expert was less qualified, and her methodology was rejected by the Court.

The Court was troubled by the fact that there were comparison signatures that were part of the record that were not presented to the experts for consideration. Also, neither party called any of the notaries or other persons that witnessed the signatures of Mr. Aksal. There were at least five of them.

Of most concern to the Court was the fact that Wilmington did not produce any original evidence of payment history, billing, default declarations, notices, etc. This concern increased

Page 3
February 8, 2023

upon a close review of the proof of claim. Here is the analysis-

1. The proof of claim was filed and signed by Trinity Financial in January 2018. The proof of claim has a standard "Mortgage Proof of Claim Attachment" which says that the principal due was $152,700, interest due was $44,283, and prepetition fees and costs due were $2,214.15, for a total claim amount of $199,197.15.

2. The "Loan Payment History from First Date of Default" is attached as a schedule to the proof of claim and suggests that the first date of default by Mr. Aksal was May 2012, and that Mr. Aksal made no payments on the loan after that date.

3. As of May 2012, the principal amount was $152,700. Monthly payments were 6% of the principal amount - $763.50.

4. The principal amount of the original promissory note dated September 18, 2006 was $152,700 with an interest rate of 7%. This was an interest-only loan with the principal amount of the loan due on the date of maturity, September 30, 2008. The original mortgage references the note in the amount of $152,700 and interest rate of 7%.

5. The Modification of Mortgage dated March 17, 2009 ("2009 Mortgage Modification") increased the principal amount to $162,002.44 but reduced the interest rate to 6%. The date of maturity was extended to March 1, 2039.

5. Trinity Financial took the note and mortgage by assignment in January 2017. The first assignment of the note and mortgage by the FDIC as receiver for Fort Lee Federal Savings Bank occurred in February 2013. Thus, when the note and mortgage were first assigned by the FDIC, Mr. Aksal must have already been in default for approximately 10 months because, according to the proof of claim, his last payment was in April 2012.

From the above, the Court would have to conclude that from the date of the 2009 Mortgage Modification through April 2012, Mr. Aksal was not only current on his interest-only payments under the note, but he had also paid the principal down from $162,002 to $152,700 which,

Page 4
February 8, 2023

coincidentally, is the exact amount of the principal due under the original promissory note. The Court wanted to know whether Wilmington or Trinity Financial had any records which memorialized the loan payment history from 2009 – 2012 which should reflect current interest payments, an early principal paydown, and then the alleged default in May 2012.

On January 23, 2023, at the Court's request, Wilmington filed a Declaration of a Vice President of Aspen Properties, LLC (Wilmington's agent) to address the Court's concerns. [ECF No. 245]. First, the Declaration confirmed that the proof of claim provided that: (i) the principal balance of the secured debt is $152,700, and (ii) the interest rate is 6% per the 2009 Mortgage Modification. These facts are obvious from the attachments to the proof of claim. Apparently, Wilmington cannot explain how the principal was reduced from $162,002 to $152,700. Second, the Declaration confirmed that Mr. Aksal's last payment was April 2012 and that his "first missed payment" was May 1, 2012. As to the basis for this information, the Declaration states "there were several assignments of this loan and with each assignment the date of default information was received from the assignor and made part of incorporated business records." Again, the last payment and default date are reflected in the proof of claim attachment. It appears that the date of default information was passed with each assignment of the note and mortgage without any records of what transpired before the default. But the Court believes that such records should exist and reflect that (i) Mr. Aksal was current on his interest payments from the 2009 Modification of Mortgage until May 2012 and (ii) during that same period, he made additional payments against principal to bring the note balance back down to $152,700.

Page 5
February 8, 2023

Technically, the proof of claim complies with Bankruptcy Rule 3001(c)(2) as it has an itemized statement of interest and late charges and lists a cure amount as of the petition date. Also, the original promissory note, mortgage and 2009 Modification of Mortgage are attached and in the record as evidence. Thus, the proof of claim constitutes prima facie evidence of the validity and amount of the claim under Bankruptcy Rule 3001(f). So, Mr. Aksal had the burden of producing evidence to refute the claim, and if he did, Wilmington had the ultimate burden of persuasion. *See In re Umstead*, 490 B.R. 186, 192 (Bankr. E.D. Pa. 2013) (citations omitted). Mr. Aksal's evidence consisted of his testimony which included detailed accounts of fraudulent acts by the principal of Fort Lee Federal Savings Bank, Mr. Kostakopoulos, who fled the country after the bank was seized by the FDIC. Mr. Aksal also presented the sworn testimony of Ms. Mirza who corroborated his testimony to some extent. Ms. Mirza's testimony was not challenged by Wilmington. But Mr. Aksal's proposed expert was unpersuasive as set forth above and on the record on December 15, 2022. Finally, Mr. Aksal's counsel highlighted the suspicious lack of any witness testimony from Wilmington or any documents or real business records (other than a summary attached to the proof of claim) that reflect that payments were made on the loan or that the loan went into default in May 2012. Taken together, the Court believes that this was enough to shift the burden of persuasion to Wilmington.

The proof of claim has strong support in the note, mortgage and 2009 Mortgage Modification, all signed by Mr. Aksal. Though Mr. Aksal denies signing these documents, the evidence supports Wilmington on this issue. On the other hand, the lack of records described above together with the unlikely coincidence that Mr. Aksal would have made a pre-payment of

Page 6
February 8, 2023

principal from $162,002 to precisely $152,700 suggests that the records that support the loan history were either lost or they never existed. If they never existed, there is merit to Mr. Aksal's contention that the loan and mortgage were fabrications. In reviewing other cases involving objections to proofs of claim like the one here, the courts are usually presented with evidence such as payment histories, correspondence, default notices, closing documents or testimony from witnesses who participated in the transaction. If there was *any* such evidence in this case, Wilmington's claim would be more compelling.

      Based on the limited record here, the Court has struggled to reach a decision. There are very good arguments on both sides. Ultimately, Wilmington had the burden of persuasion on both the validity and amount of its claim which has not been met. This is especially true with respect to the amount of the claim because Wilmington could not produce any evidence which supported the loan activity between the 2009 Mortgage Modification and the date of the alleged default as set forth above. The Court believes that these documents should exist. As one Bankruptcy Court stated:

> A lender has an obligation to keep a full and accurate accounting of payments made and charges accrued, should be prepared to explain the contractual basis for all charges, and should be able to document that charges such as inspection fees, court costs, and the like were actually incurred and paid. An entity acquiring a note and mortgage from a lender stands in the same shoes on this point and has the same duty. This is so no matter how many times a note and mortgage are transferred.

*In re Parrish*, 326 B.R. 708, 721 (Bankr. N.D. Ohio 2005).

Page 7
February 8, 2023

For the reasons set forth above and on the record on December 15, 2022, Mr. Aksal's objection to the Wilmington proof of claim is upheld. The claim will be disallowed and expunged in its entirety. The Court will enter an appropriate order.

Very truly yours,

JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE

**DATED: February 8, 2023**